## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO. 1:23-cr-111** |
| **Plaintiff,** | **JUDGE HOPKINS** |
| **vs.** |  |
| **RICHARD CROSBY,** <br> **a/k/a "Richard Williams,"** <br> **a/k/a "Chris Miller,"** | **UNDER SEAL** |
| **Defendant.** |  |

### GOVERNMENT'S *EX PARTE* MOTION TO REVOKE BOND

The United States respectfully moves under 18 U.S.C. § 3148(b) to issue a warrant for the defendant's arrest so that his bond can be revoked. Briefly stated, the defendant falsely told the Court through counsel at his change-of-plea hearing on June 25, 2024 that he went to a hospital and received medical treatment that morning, which made it difficult for him to participate in the hearing. Thus, the Court continued the hearing for more than six weeks, until August 8, 2024. However, GPS monitoring data shows that the defendant did not go to any medical facility on the morning of the hearing or even on the day before the hearing. As is detailed below, this is not the first time this defendant has made a misrepresentation to a judicial officer while he has been on bond.

This motion is being submitted *ex parte* and under seal because the motion requests an arrest warrant.

1

## **Procedural Background**

The incident at the change-of-plea hearing on June 25th must be viewed in the context of the defendant's previous deceitful and obstructive conduct. With that in mind, the government offers the following background information.

As the Court is already aware from the statement of facts attached to the plea agreement (ECF no. 27, pages 6-9), the defendant was a practicing lawyer in Cincinnati. He ultimately resigned his law license with disciplinary proceedings pending and was convicted in two Hamilton County criminal cases pertaining to him stealing from his clients. Beginning in April 2021, while the bar discipline proceedings were underway, he began using aliases and forged credentials to get hired for attorney positions at various law firms across the country. He defrauded at least seven firms, and he used personal identifying information belonging to his girlfriend, his elderly father, a deceased person from North Carolina, and others. He even falsely represented himself as a former United States Marine. This conduct continued until the moment of his arrest on October 26, 2023, at which point he was still on probation from his Hamilton County criminal cases.

The defendant's eight months on federal bond have not been smooth. At his initial appearance on October 26, 2023, he was ordered to surrender his passport to the U.S. Clerk of Courts (see bond order, ECF no. 10, at ¶ 9(g)). Most defendants accomplish this task within a few hours or at most a day or two. Mr. Crosby, however, still had not surrendered his passport two weeks later. On November 9, 2023, a Hamilton County Probation officer reported that the defendant had claimed to have given his passport "to the Feds"; meanwhile, however, the Clerk's

office for the U.S. District Court for the Southern District of Ohio had not received the passport. The defendant finally surrendered his passport on November 14, 2023.

Also, at the time of his release on bond, the defendant signed his bond paperwork and provided an address on       in Mason, Ohio as his address (see bond order, ECF no. 10, at page 5).  A few days later, on October 30, 2023, the government learned that the defendant had leased this house under one of his aliases, "Richard Williams."  The U.S. Attorney's Office immediately provided this information and a copy of the lease to the federal Pretrial Services office.  A copy of the lease is also attached hereto as Exhibit A.

On January 4, 2024, an attorney for the Clermont County Child Support Enforcement office contacted the government to report that Mr. Crosby had just participated in a hearing pertaining to his child support obligations, and he represented to the presiding judge that he could not commit to attending a potential hearing on January 29, 2024 because he would be "out of the country on approved travel from federal and state courts" in late January.  The Clermont County attorney provided an audio recording of Mr. Crosby's statement in court.  (A copy of this audio recording is being submitted to this Court via e-mail together with the instant motion as Exhibit B; the relevant portion begins around the 18:45 time stamp of the recording.)  The statement was false; Mr. Crosby's travel was in fact restricted to the Southern District of Ohio and he had no authorization from this Court to leave the country.  The U.S. Attorney's Office forwarded this information to Mr. Crosby's Pretrial Services officer, who explained that Mr.

Crosby had asked her about going on a cruise to Puerto Rico, the Dominican Republic, and Turks and Caicos, though the Pretrial Services officer had not approved of this plan.[1]

On June 17, 2024, Mr. Crosby filed a motion requesting new counsel in one of his Hamilton County criminal cases (case no. B 2103088).  He attached a financial affidavit, which he signed and thereby certified the truth of the information he provided.  On the affidavit, he listed his address as ███████████████, Cincinnati, OH 45244 (see attached Exhibit C). This is the home that he and his ex-wife owned several years ago.  However, records from the Clermont County Auditor indicate that Mr. Crosby deeded the property to his wife in April 2021, and she then sold it to a third party in October 2021 (see attached Exhibit D).  Moreover, undersigned counsel for the government called Mr. Crosby's supervising federal Pretrial Services officer on June 27, 2024 and was informed that Mr. Crosby is actually still residing at the address in Mason that he leased under his alias, "Richard Williams."

### Facts Relevant to the Bond Violation

As the Court is aware, Mr. Crosby appeared at 3:00 PM on Tuesday, June 25, 2024 for a change-of-plea hearing.  Mr. Crosby stated that he was feeling the effects of some medical issues he was dealing with.  At a sidebar, his attorney explained that Mr. Crosby had told her that he had been seen that morning at a hospital and was given a morphine drip and other drugs.  Based on Mr. Crosby's representations through counsel that he had been in the hospital earlier that same day and received morphine, the Court suspended the hearing and rescheduled it for a date more than six weeks later on August 8, 2024.

---

[1] Also, according to the docket for his ongoing domestic relations case in Clermont County (case 2021 DRA 00053), Mr. Crosby was found in contempt on September 25, 2023 and is facing another contempt hearing on August 1, 2024.

Mr. Crosby is on GPS location monitoring through the Hamilton County probation office. The GPS monitoring reveals two significant facts regarding Mr. Crosby's whereabouts in the hours before and after the hearing. First, he was not at a hospital on the morning of the hearing (or even the day before the hearing), contrary to the representation he made through counsel to this Court. Second, immediately after the hearing, he drove to the parking lot of Bethesda North Hospital and stayed there for about 40 minutes without entering the building. In other words, the GPS data shows that Mr. Crosby lied to this Court about being at a hospital on the morning of the hearing, and then later spent some time in a hospital parking lot in an apparent attempt to create the appearance that he was at a hospital on the day of the hearing, albeit after the hearing and not before. The GPS information from Hamilton County is attached hereto as Exhibit E.

**<u>Argument</u>**

The Court should issue a warrant for the defendant's arrest so that his bond can be revoked. "The attorney for the Government may initiate a proceeding for revocation of an order of release by filing a motion with the district court. A judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release, and the person shall be brought before a judicial officer in the district in which such person's arrest was ordered for a proceeding in accordance with this section." 18 U.S.C. § 3148(b).

The defendant was released on a bond, which included the standard condition that he "must not violate any federal, state, or local law while on release" (see bond order, ECF no. 10, at ¶ (1)). The defendant's false statement through counsel to this Court about being in a hospital and receiving morphine on the morning of the hearing may violate any number of federal laws,

5

including but not limited to contempt of court (18 U.S.C. § 401)[2] and obstruction (18 U.S.C. § 1512(c)(2))[3].

     The Court need only find that there is "probable cause to believe that the person has committed a Federal, State, or local crime while on release." 18 U.S.C. § 3148(b)(1)(A).  This is a low threshold.  In the context of a bond violation, "[t]o find probable cause, the evidence must 'warrant a [person] of reasonable caution in the belief that the defendant has committed a crime while on bail.'"  United States v. Gentry, No. 98-1494, 1998 WL 476200 (6th Cir. Aug. 3, 1998) (quoting cases).  In this case, the defendant's misrepresentations at the hearing on June 25, 2024 combined with the GPS tracking information from Hamilton County easily satisfy this low standard.

     For the foregoing reasons, the United States respectfully asks the Court to issue a warrant for the defendant's arrest.

---

[2] "A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—
    (1)  Misbehavior of any person in its presence or so near thereto as to obstruct administration of justice;
    …
    (3)  Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

[3] "Whoever corruptly… otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both."  An "official proceeding" includes a federal court proceeding.  18 U.S.C. § 1515(a)(1)(A).

**Respectfully submitted,**

KENNETH L. PARKER
UNITED STATES ATTORNEY


*s/ Timothy Landry*
TIMOTHY LANDRY (MA 669554)
Special Assistant United States Attorney
221 East 4th Street, Suite 400
Cincinnati, OH 45202
Phone No.: (513) 684-3711
Email: Timothy.Landry@usdoj.gov

# Exhibit A
# Lease Under Alias

Keller Williams Advisors Realty                    3505 Columbia Pkwy, Ste 125        (513)2593058
Nexxus Property Group                               Cincinnati, OH 45226

# *RENTAL AGREEMENT*

**THIS RENTAL AGREEMENT** is made this <u>3rd</u> day of <u>  November 2022</u>
by and between <u>William & Jennifer Niu,</u> the owner of the premises described below, said owner being
hereinafter referred to as "**Owner**", and<u>      Richard Williams     </u> hereinafter referred to as "**Resident**".

**THE OWNER** hereby rents to **the Resident** the dwelling located at<u>▮▮▮▮▮▮▮▮▮▮</u>, Mason, OH 45040
on the following terms and conditions:

1.      **TERM.** The Resident agrees to occupy said premises for an original term of<u>  a little over 2 years (24</u>
months) commencing on the <u>12th</u> day of <u>  November, 2022               </u>, and expiring on the <u>30th</u> day of
<u>November,  2024</u>.

2.      **RENT.** The Resident agrees to pay, without demand, the monthly rental fee of <u>Twenty Four Hundred</u>
<u>$2400.00       </u>) DOLLARS, and **due on or before the 1st (first) day of each month** during the term of this
Agreement. **Only one (1) check per unit will be accepted**. The prorated amount of <u>Fifteen Hundred and</u>
<u>Twenty ($1520) Dollars      </u> will be collected on the day of move-in, for the month/year of <u>November 2022</u>

3.      **LATE CHARGE.** The rent is **due and payable on the 1st (first) day of the month.** If the full amount
of rent is not received by the Owner within three (3) days of said due date, for each day late thereafter, in
addition to the full month's rent, the Resident agrees to pay a late charge of $50.00(Fifty and 00/100 Dollars)
per day. It is expressly understood that a late charge shall not be considered a waiver of the Owner's rights to
begin eviction proceedings. If the late charge is not tendered with the Resident's monthly rental payment, the
Owner shall not be obligated to accept the late rent.

4.      **MANNER OF PAYMENT.** All payments are to be delivered to<u>   Electronically      </u>. All payments
shall be made by check or money order **only** made payable to<u>  **Jennifer & William Niu.**</u> If a check is returned
by the bank for any reason, there shall be a $50.00 charge for the returned check plus additional late charges as
described above, and personal checks from the Resident will then no longer be accepted.

5.      **SECURITY DEPOSIT.** The Resident shall keep on deposit at all times with the Owner a sum equal to
one month's rent, which shall be held as security for the faithful performance of this Agreement. An additional
cleaning deposit of $200, together with the one-month Security Deposit mentioned above, is due upon
executing of this agreement. At no time during the term of this Agreement shall the Resident use the Security
Deposit for rent or other charges which may become due and owing under the terms and conditions of this
Agreement.
The Security Deposit and cleaning deposit will be refunded to the Resident from the Owner in full with no
interest within thirty (30) days of the Resident's vacating the premises provided all of the following conditions
are met:

(1)     The Resident has given a minimum of sixty (60) days written notice, with said notice beginning only on
the monthly rental due date specified in Paragraph #2 of this Agreement;
(2)     All rent, utilities and other charges have been paid in full;
(3)     The Resident has not breached any provisions of this Agreement;
(4)     The Resident has returned the premises in the same or better condition as when received, or as they may
be put, reasonable wear and tear excepted;



(5)      The Resident has left the entire premises clean, including but not limited to the range and/or oven, refrigerator (which shall also be defrosted), closets and cupboards, bathrooms, floors and windows; and the Resident has removed all trash and personal belongings from the premises.  FAILURE TO LEAVE THE PREMISES IN A CLEAN CONDITION, READY FOR THE NEXT OCCUPANT, SHALL RESULT IN A MINIMUM CHARGE OF $250.00 FOR GENERAL CLEANING, WHICH SHALL BE DEDUCTED FROM THE CLEANING DEPOSIT AND GENERAL SECURITY DEPOSIT;

(6)      The Resident has returned all keys;

(7)      The Resident has left a forwarding address in writing with the Owner.

**6.      CONDITION OF PREMISES UPON OCCUPYING AND VACATING RESIDENCE.**  Upon vacating the premises, the Resident shall leave the premises in the same or better condition as when accepted by the Resident or as they may be put by the Owner or Resident, reasonable wear excepted. The condition of the premises shall be verified by the Resident and Owner completing a Move-In/Move-Out checklist which is hereby incorporated into and made a part of this Agreement.

**7.      RENEWAL.**  Unless another rental agreement is made between the Owner and the Resident, or unless written notice of termination is given by one party to the other at least sixty (60) days before the expiration of this Agreement, this contract shall be automatically renewed for another year (12 months) with the same terms BUT 5% rent increase.

**8.      RESIDENT'S LIABILITY.**  It is expressly understood and agreed that if the Resident vacates the premises prior to the expiration of this Agreement even in the case of eviction, the Resident shall still be responsible for damages measured by the receivable rents to the expiration of this Agreement or until such time as the premises are re-rented, whichever occurs first.  Additionally, the Resident shall be responsible for the cost of restoring the premises to its original condition as of the commencement of this Agreement, as well as any damages which the Owner may have sustained as a result of the Resident's use and occupancy of the premises.

**9.      ABANDONMENT OF PROPERTY.**  Any personal property remaining in or about the premises after the termination of this Agreement or Resident vacates the premises shall be considered abandoned, and at the sole discretion of the Owner, shall be disposed of in any manner.  (Failure of the Post Office to deliver a certified letter to the Resident shall be considered bona fide evidence that the Resident has vacated the premises.)  Any costs of disposal of abandoned property shall be the Resident's responsibility, and shall be deducted from the Security Deposit or paid to the Owner if said deposit is insufficient to reimburse the Owner for disposal of the abandoned property.  The Resident shall hold the Owner harmless from any and all liability arising therefrom.  This provision shall survive the termination of this Agreement.

**10.      USE AND OCCUPANCY.**  The Resident shall personally use and occupy the premises solely as a private dwelling for the following people whose names and ages are:   Richard Williams ,          Williams (7 years old) &          Williams (3 years old).

Written permission of the Owner must be obtained for any other additional occupants. The Resident agrees to use and occupy the premises in a safe, proper and sanitary manner.  The Resident shall not use any part of the premises for any noisy, disorderly, unlawful or immoral purpose or in any manner offensive to the neighbors or for any purpose deemed hazardous by the Owner.  The Resident further agrees to comply with all applicable state and local housing, health and safety codes, and any other laws, ordinances or insurance regulations in or about the premises.  Any guest who will stay for longer than 10 days needs to be registered with and approved by the Owner.

- 2 -



**11.     UTILITIES.  The Resident** agrees to have all utilities for the premises placed in his/her name and to pay for the same, except the following which will be provided at the Owner's expense: <u>Property Tax, Insurance and HOA fee.</u>

**12.     PETS.  Pets are not allowed on the premises unless with prior written consent of the Owner.** Under the circumstances pets are allowed by the Owner, Residents will pay an extra monthly rent of $50 per pet and will keep an additional $250/pet Pet Deposit with the Owner **,** which shall be returned if there is no pet related damage and odor in the premises at the end of this Agreement.

**13.     RESIDENT'S RESPONSIBILITIES.  The Resident shall:**

(1)     Pay the rent at the times and place and in the manner specified above;
(2)     Notify the Owner of any necessary repair(s) that is(are) over $100 ( One hundred dollars); and the Resident covers up to $100 per month (accumulative) for maintenance and minor repairs.  Resident is responsible for maintaining the lawn and the landscaping (lawn and landscaping maintenance fee are not included in the $100 above);
(3)     Notify the Owner of any extended absence of seven (7) days or more from the premises;
(4)     Furnish the Owner the telephone number for the premises, and any subsequent changes thereof, within three (3) days of such installation or change;
(5)     Install an acceptable window treatment, such as draperies, blinds or shades, in the premises within thirty (30) days after the commencement of this Agreement if necessary (sheets and other temporary articles are not acceptable);
(6)     Maintain in good working order and condition any appliances supplied by the Owner;
(7)     Use and operate all electrical and plumbing fixtures properly;
(8)     Keep all plumbing fixtures as clean as their condition permits and free of all foreign materials;
(9)     Prohibit tampons, sanitary napkins, disposable diapers or other foreign materials to be flushed down the toilets;
(10)    Maintain the smoke detectors in working order at all times, including replacing batteries if needed;
(11)    Maintain a minimum temperature of 55 degrees in the premises, even during the Resident's absence, in order to prevent pipes from bursting in cold weather;
(12)    No smoking is permitted in the premises;
(13)    No waterbeds are allowed in the premises.

**14.     ALTERATIONS.  The Resident** shall not remodel, paint, wallpaper, or make any other changes to any part of the premises, its furnishings or appliances, nor shall the Resident attach or remove any fixtures, accessories, locks, window air conditioners etc. without the Owner's prior written consent.

**15.     LIABILITY FOR DAMAGE, INJURY AND PROPERTY.  The Owner** shall not be liable for any damage, injury or loss to person or property caused by anyone not under the direct control and specific order of the Owner, including but not limited to the acts or omissions of the Resident or other dependent(s) and/or guest(s) of the Resident.  Furthermore, all personal property kept in or about the premises by the Resident or the Resident's guests shall be kept at the Resident's own risk.  The Resident hereby releases the Owner and its Broker from all liabilities for damages as described herein and **agrees to obtain Renter's insurance covering personal property and liability, with a minimum liability coverage of $100,000 and with the Owner as additional insured.**

The Resident is responsible without limitation for the cost of repairing any and all damage caused by the Resident, the Resident's family, servants, or visitors, including damage resulting from drain stoppages caused by

- 3 -



the same. The Resident shall pay for such damages within thirty (30) days of presentation of a bill for the same from the Owner, or the sum shall become additional rent payable on demand. The Resident shall give the Owner prompt written notice of any accident, fire, or damage occurring on, about, or to the premises, its furnishings or fixtures.

The Resident shall also be responsible for the cost of any and all repairs made by the Resident without the Owner's prior written permission.

**16.     ACCESS.** The Resident agrees not to unreasonably withhold consent for the Owner to enter on the premises for the purpose of inspecting the premises or to make ordinary, necessary or agreed repairs, alterations, decorations or improvements, or to supply necessary or agreed services, including the delivery of parcels which are too large for the Resident's mail facilities. Additionally, the Owner/Agent shall have the right to enter the premises for the purpose of exhibiting the premises to prospective or actual purchasers or mortgagees, to prospective residents, or to inspectors, appraisers, workmen or contractors. The Owner/Agent will normally give advance notice of intent to enter and will normally enter only at reasonable times. The Owner and his agent shall further have the right to exhibit and show the premises to potential buyers or renters and to display the "for sale" and/or the "for rent/lease" signs on the premises at any time within forty-five (45) days before the expiration of this Agreement.

**17.     NON WAIVER.** No waiver by the Owner of any breach of any term, covenant or condition hereof shall be constructed as a waiver of any subsequent breach of the same or any other term, covenant or condition. No waiver by the Owner shall be deemed to have been made unless expressed in writing and signed by the Owner.

**18.     OWNER'S RIGHT TO RECOVER.** If the rent is not received on the due date specified in Paragraph #2 of this Agreement, or if the Resident violates any of the terms and conditions of this Agreement, or any addendums or amendments thereof, including any Community Guidelines/HomeOwners' Association Regulations herein or hereafter adopted by the Owner, then the Owner may at anytime begin eviction proceedings, enter and take possession of the premises, sue for and recover all of the rents and damages occasioned by such violation(s) along with any other damages or costs to which the Owner may be entitled by law, and re-rent the premises for the remainder of the term at the best rent obtainable.

**19.     NOTICE.** Any and all notices and/or other communication required or permitted by the Agreement shall be given in writing to where the rent is sent to or per Owner's instruction.

**20.     SUCCESSORS AND ASSIGNS.** This Agreement shall be binding upon and shall inure to the benefit of the Resident and the Owner, and their respective heirs, legal representatives, successors, and assigns. The Resident may assign this Agreement or sublet the premises provided the Resident receives prior written permission from the Owner. Any assigns and sublease arrangements will incur a $100 administrative fee plus application fees for the assignees/sublets. In the event of a transfer in ownership of the premises during the term, the new owner may not cancel this Agreement.

**21.     JOINT & SEVERAL LIABILITY.** Each Resident agrees to individually accept full responsibility for the full amount of the rent or other sums which may become due and owing under the terms of this Agreement.

**22.     TIME OF ESSENCE.** Time is of the essence with regard to this Agreement and any provisions thereof.

**23.     SEVERABILITY OF PROVISIONS.** The parties agree that each provision of this Agreement shall be deemed severable and if for any reason any provision or provisions hereof are found to be invalid, unenforceable,



or contrary to any existing or future law, such invalidity shall not affect the applicability or validity of any other provisions of this Agreement.

**24.    RIGHTS AND REMEDIES.**  The rights and remedies under this Agreement are cumulative and either party's using any one right or remedy will not preclude or waive that party's right to use any other.  These rights and remedies are in addition to any other rights the parties may have by law, statute, ordinance, or otherwise.

**25.    ENTIRE AGREEMENT.**  This Agreement, along with any other documents signed by the Resident and the Owner at the time of executing of this Rental Agreement constitutes the entire agreement between the Owner and the Resident, there being no oral conditions, representations, warranties or agreements.  The Community Guidelines/HomeOwners' Association Regulations may be amended or added to by the Owner giving written notice to the Resident.  Any other subsequent amendments or additions to this Agreement shall not be valid unless placed in writing and signed by both the Owner and the Resident.

| | |
|---|---|
| *Richard Williams*  dotloop verified 11/04/22 10:42 AM EDT EALC-BHQK-FURN-CGBS | *Jennifer Niu*  dotloop verified 11/04/22 2:29 PM EDT KIU7-I7HS-NTKN-TVEI |
| **Resident(s)**          **Date** | **Owner(s)**          **Date** |
| | *William Niu*  dotloop verified 11/04/22 2:28 PM EDT M2E5-VD9T-RIUX-Y7UK |
| **Resident(s)**          **Date** | **Owner(s)**          **Date** |

- 5 -



Exhibit B

Clermont County Domestic Relations Court

audio recording

(submitted via e-mail)

Exhibit C

Hamilton County Court Filing

**IN THE COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**
**CRIMINAL DIVISION**

| | | |
|---|---|---|
| **STATE OF OHIO** | : | **Case No.: B 2103088** |
| | : | |
| | : | |
| **Plaintiff,** | : | **Judge : Jenkins** |
| | : | |
| **v.** | : | |
| | : | |
| **RICHARD CROSBY** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |
| | : | |
| | : | |

<u>**DEFENDANT'S MOTION TO APPOINT NEW COUNSEL**</u>

Now comes the Defendant, and hereby moves this Court for an appointment of private counsel on this matter. A memorandum and affidavit of indigency in support is attached.

Respectfully    submitted,

<u>/s/ Richard Crosby</u>

Richard Crosby

(Pro-Se)

## **MEMORANDUM IN SUPPORT**

Defendant was set to retain new counsel and his financial status has changed. The prior relationship with earlier appointed counsel is not sustainable as this Court is aware and Defendant qualifies for new appointment. Wherefore, Defendant request this court appoint new private counsel and continue this matter until August 12, 2024.

## **CERTIFICATE OF SERVICE**

A copy of the foregoing was sent via court dropbox to the Prosecution  this 17 day of June, 2024

/s/ Richard Crosby

## FORM 20.  CIVIL FEE WAIVER AFFIDAVIT AND ORDER

IN _____

_____

|  |  |  |
|---|---|---|
| | ) | CASE NO. |
| | ) | |
| Plaintiff, | ) | JUDGE |
| | ) | |
| vs. | ) | |
| | ) | **FINANCIAL DISCLOSURE / FEE-** |
| | ) | **WAIVER AFFIDAVIT** |
| Defendant. | ) | **AND ORDER** |

Pursuant to R.C. 2323.311, the below-named Applicant requests that the Court determine that the Applicant is an indigent litigant and be granted a waiver of the prepayment of costs or fees in the above captioned matter. The Applicant submits the following information in support of said request.

| Personal Information | |
|---|---|
| Applicant's First Name<br>R:CHARD | Applicant's Last Name<br>CROSBY |
| Applicant's Date of Birth<br>/87 | Last 4 Digits of Applicant's SSN<br>5973 |
| Applicant's Address<br>Cincinnati, OH ⬛45244 | |

| Other Persons Living in Your Household | | | |
|---|---|---|---|
| First Name | Last Name | Is this person a child under 18? | Relationship (Spouse or Child) |
| | | ☐ Yes    ☐ No | |
| | | ☐ Yes    ☐ No | |
| | | ☐ Yes    ☐ No | |

**Public Benefits**

I receive the following public benefits and my gross income, including the cash benefits marked below, does not exceed **187.5%** of the federal poverty guidelines.

Place an "X" next to any benefits you receive.

Ohio Works First[1]: ___   SSI[2]: ___   Medicaid[3]: ___   Veterans Pension Benefit[4]: ___   SNAP / Food Stamps[5]: ___

| Monthly Income | | | |
|---|---|---|---|
| I am **NOT** able to access my spouse's income ☐ | | | |
| | Applicant | Spouse (If Living in Household) | Total Monthly Income |

| | | | |
|---|---|---|---|
| Gross Monthly Employment Income, including Self-Employment Income (Before Taxes) | $ | $ | $ |
| Unemployment, Worker's Compensation, Spousal Support (If Receiving) | $ | $ | $ |
| | **TOTAL MONTHLY INCOME** | | $ 2,500 |

| Liquid Assets | |
|---|---|
| **Type of Asset** | **Estimated Value** |
| Cash on Hand | $ ∅ |
| Available Cash in Checking, Savings, Money Market Accounts | $ ∅ |
| Stocks, Bonds, CDs | $ |
| Other Liquid Assets | $ |
| **Total Liquid Assets** | $ |

| Monthly Expenses | | | |
|---|---|---|---|
| **Column A** | | **Column B** | |
| **Type of Expense** | **Amount** | **Type of Expense** | **Amount** |
| Rent / Mortgage / Property Tax / Insurance | $ 2000 | Insurance (Medical, Dental, Auto, etc.) | $ |
| Food / Paper Products/Cleaning Products/Toiletries | $ 400 | Child or Spousal Support that You Pay | $ |
| Utilities (Heat, Gas, Electric, Water / Sewer, Trash) | $ 100 | Medical / Dental Expenses or Associated Costs of Caring for a Sick or Disabled Family Member | $ |
| Transportation / Gas | $ | Credit Card, Other Loans | $ |
| Phone | $ 200 | Taxes Withheld or Owed | $ |
| Child Care | $ | Other (e.g. garnishments) | $ |
| **Total Column A Expenses** | $ 2700 | **Total Column B Expenses** | $ |
| **TOTAL MONTHLY EXPENSES** (Column A + Column B) | | | |

I, _Rouchard Crosby_ , hereby certify that the information I have provided on
_(Print Name)_
this financial disclosure form is true to the best of my knowledge and that I am unable to prepay the costs or fees in this case.

_Signature_

**NOTARY PUBLIC:**
Sworn to before me and signed in my presence this _17_ day of _June_ , 20 _24_,
in _Hamilton_ County, Ohio.

**BRENDA J. JEFFERS**
Notary Public, State of Ohio
My Commission Expires
May 04, 2029
COMMISSION: 2019-RE-778990

Notary Public (Signature)

_Brenda J. Jeffers_
Notary Public (Printed)
My Commission expires: _5/4/29_

If available, an individual duly authorized to administer this oath at the Clerk of Court's Office will do so at no cost to the Applicant.

Exhibit D

Clermont County Auditor

https://www.clermontauditorrealestate.org/_web/datalets/datalet.aspx?mode=sales_clermont&sIndex=1&idx=25&L...

uditor Home



**PARID: 413214A501.**
**MARISCAL MOLINA DANIEL ANDRES**

| Sales/Transfers | 1 of 4 |
|---|---|

| | |
|---|---|
| Sale Date | 21-OCT-2021 |
| Sale Type | LAND & BUILDING |
| Sale Amount | $279,000 |
| Deed Book/Page | 2899/0848 |
| Trans # | 7173 |
| Source | OTHER - DEED OR OTHER SOURCE |
| Seller | CROSBY ELISA A |
| Buyer | MARISCAL MOLINA DANIEL ANDRES |

**Sales History**

| Date | Amount | Seller | Buyer |
|---|---|---|---|
| 21-OCT-21 | $279,000.00 | CROSBY ELISA A | MARISCAL MOLINA DANIEL ANDRES |
| 22-APR-21 | | CROSBY ELISA A & RICHARD L III | CROSBY ELISA A |
| 11-DEC-15 | $200,580.00 | DREES COMPANY | CROSBY ELISA A & RICHARD L III |
| 27-AUG-15 | $25,500.00 | HARRISON WOODS DEVELOPMENT LLC | DREES COMPANY |

25 of 30
Return to Search Results

**Actions**
- Neighborhood Sales
- Proximity Search
- Printable Summary
- Printable Version
- Custom Report Builder

**Click on the following links to Contact Us regarding:**

This Parcel's Data

Address Change Request

Inquiry not related to a specific parcel

**Reports**

Mailing List
Property Record Card
Current Tax Bill

file
es/Transfers
idential
mmercial
buildings
mits
ues
ue History
Summary
Detail
rent Tax

taauditorrealestate.org/_web/search/commonsearch.aspx?mode=owner

Exhibit E

Hamilton County Probation GPS Data



# County of Hamilton
### Probation Department

**JERRY A CAMPBELL**
**Chief Probation Officer**
**TIANA JOHNSON**
**Asst. Chief Probation Officer**
**KEVIN M BONECUTTER**
**Asst. Chief Probation Officer**

**Court of Common Pleas**
**Municipal Court**

**800 BROADWAY**
**CINCINNATI OH 45202**

06/28/2024

**Hello,**

**Attached below you will find the GPS points of Richard Crosby on 6/24/24 and 6/25/24. The defendant did not receive any medical treatment on 6/24/24 according to his GPS points. On 6/24/24 the defendants GPS points list him at a LaRosa's and a Buffalo Wild Wings in Mason, OH. The morning of the defendant's court hearing on 6/25/24 the defendant went straight from his house to the courthouse without any stops along the way. On 6/25/24 following the defendants court hearing he was located in the parking lot of Bethesda North Hospital. The defendant was in the parking lot from 3:48PM until 4:29PM. As to the GPS point of the defendants monitor it appears the defendant never entered the hospital nor should have been under any substances that would affect the defendant's decision making or thought process. If you need any additional information regarding the defendant and his whereabouts please contact me as I would be happy to assist in any way.**

Sincerely,

**MATTHEW RUTZ**
**HAMILTON COUNTY ELECTRONIC MONITORING OFFICER**
**800 BROADWAY**
**CINCINNATI OH 45202**
**(513)946-9673**



