UNITED STATES DISTRICT COURT
                       SOUTHERN DISTRICT OF OHIO
                           WESTERN DIVISION


                                - - -

UNITED STATES OF AMERICA,        .   Case No. 1:23-cr-00111
                                 .
            Plaintiff,           .
                                 .   Cincinnati, Ohio
          - v -                  .
                                 .   Friday, March 7, 2025
RICHARD CROSBY,                  .
                                 .
            Defendant.           .
                                - - -

                TRANSCRIPT OF SENTENCING PROCEEDINGS
           BEFORE THE HONORABLE JEFFERY P. HOPKINS
                UNITED STATES DISTRICT COURT JUDGE

                                - - -


For the United States:      TIMOTHY LANDRY, ESQ.
                            Assistant U.S. Attorney
                            United States Attorney's Office
                            221 East Fourth Street, Suite 400
                            Cincinnati, Ohio  45202

For the Defendant:          ZENAIDA RENEE LOCKARD, ESQ.
                            Federal Public Defender
                            250 East Fifth Street, Suite 350
                            Cincinnati, Ohio  45202

Court Reporter:             LINDA S. MULLEN, RDR, CRR
                            Official Court Reporter
                            100 East Fifth Street
                            Cincinnati, Ohio  45202


Proceedings recorded by mechanical stenography, transcript
produced by computer.

(Proceedings in open court, March 7, 2025, 12:08 p.m.)

COURTROOM DEPUTY: Today is March 7, 2025. This is Case Number 1:23-cr-111, United States of America versus Richard Crosby.

We're here today for a sentencing, Your Honor.

THE COURT: All right. Let's have appearances of counsel, please.

MR. LANDRY: Good afternoon, Your Honor. Tim Landry appearing on behalf of the United States.

THE COURT: Thank you, Mr. Landry.

MS. LOCKARD: Good afternoon, Your Honor. Zenaida Lockard on behalf of Mr. Crosby, who is seated to my left.

THE COURT: All right. We have been delayed, we were to start this hearing at 11:30 -- 10:30, so we're now at 12:15, and the Court thought it might inquire as to what the further delay is that's causing -- what's causing the further delay with respect to this sentencing hearing.

MS. LOCKARD: Your Honor, respectfully, Mr. Crosby and I have been in discussions --

THE COURT: Sit down, Mr. Crosby.

MS. LOCKARD: -- have been in discussions that, from the defense perspective, we need to resolve prior to proceeding with sentencing. I was hopeful that we might be able to resolve them, but given the significant delay, I am requesting a continuance so that I can meet with my client in private at

the Butler County Jail and then resume these proceedings.

THE COURT: Okay. So we're not -- is Mr. Crosby ready to move forward in his sentencing hearing or is there a problem with that?

MS. LOCKARD: Your Honor, without disclosing what we are discussing, it's separate and apart from the sentencing hearing, but it's a matter that I think we need to resolve between the two of us before we can proceed with the sentencing.

THE COURT: Mr. Landry, is there any objection from the government to adjourn today's hearing?

MR. LANDRY: No, Your Honor. When I spoke with Ms. Lockard, I believe she indicated that she would be seeking a fairly brief continuance of maybe a week or two, and the government has no objection to that if it's necessary.

THE COURT: All right. This is rather inconvenient. The Court has a very crowded schedule, as you all know, and we had worked this hearing in at this time.

Is there nothing that can't be done today with further discussion between you and your client, Ms. Lockard, that we can proceed today since Mr. Crosby is down from Butler County and everyone is assembled and ready to proceed, or do you need a week's time?

MS. LOCKARD: Your Honor, if the Court would like to adjourn until later today, then perhaps I can meet with him in

the lockup and continue our discussions. I don't know what the Court's availability is, but I know everyone was in the courtroom and waiting and so I was trying to be respectful of everyone's time while still trying to resolve the matter.

THE COURT: All right.

Mr. Landry, what's your thought?

MR. LANDRY: That's fine with me, Your Honor. I'm available all day.

THE COURT: Very well. Okay. It is 12:20 now, roughly. We can reconvene this hearing at 2:00 to see where you stand.

Is that sufficient time, Ms. Lockard?

MS. LOCKARD: Yes, Your Honor.

THE COURT: All right. We'll reconvene at 2:00 then. We're adjourned.

(A recess was taken from 12:22 p.m. to 2:03 p.m.)

(The following portion is sealed and contained under separate cover.)

(Recess taken from 2:04 p.m. to 2:15 p.m.)

(The previous portion is sealed and contained under separate cover.)

THE COURT: All right. We're reconvened after a sidebar with counsel that is going to be sealed. And it's my understanding that the defendant would like to make a statement to the Court that is also going to be sealed. We'll do that at sidebar.

We'll start by having the defendant come forward and make whatever statement he deems appropriate.

(The following portion is sealed and contained under separate cover.)

(The preceding portion is sealed and contained under separate cover.)

(Proceedings in open court, March 7, 2025, 2:20 p.m.)

THE COURT: All right. We are back on the record and we are prepared to move forward, as I understand, with the sentencing hearing today that has been delayed a number of hours now.

So as I began today's hearing, Mr. Crosby, I'm going to give you an opportunity to make statements to this Court. I am also going to have counsel give me mitigating, and maybe statements that would serve as factors that the Court should consider as aggravation for imposing a sentence.

But we start with very mundane questions and then we'll get into the merits. So the first thing I have to ask is, are you the defendant, Richard Crosby?

THE DEFENDANT: Yes, Judge.

THE COURT: Are you seated beside your counsel in this matter, Ms. Zenaida Lockard? She's the attorney representing you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right.

Ms. Lockard, can you just acknowledge on the record again you're here on behalf of Mr. Crosby?

MS. LOCKARD: Yes, Your Honor, I am.

THE COURT: All right.

Mr. Landry, do you want to reenter your appearance as well?

MR. LANDRY: Yes, Your Honor. Tim Landry appearing for the United States of America.

THE COURT: Thank you, Mr. Landry, Ms. Lockard, and Mr. Crosby.

So on July 9th, 2024, the defendant, Mr. Crosby, entered a plea of guilty to Counts 14, 15, and 16 of the indictment in violation of 42 U.S.C. Section 408(a)(7)(B).

In doing so, the defendant pled guilty to three Class D felonies that provide for statutory penalties of a sentence of up to five years' imprisonment, up to three years of supervised release, a $250,000 fine and twice the gross gain or loss, and restitution, and a $100 special assessment per count, and for three counts, that would be $300.

The defendant, Mr. Crosby, pled guilty to that charge pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C).

In that agreement, the parties agree that the following is an appropriate sentencing disposition in this case: A term of imprisonment of 37 months on each count to run concurrently, a term of supervised release of not less than one year and not more than three years on each count to run concurrently as well, a mandatory special assessment of $100 per count, totaling again $300.

The parties further agreed that under Sentencing Guideline 2B1.1(a)(2), the base offense level is six.

Under Guideline 2B1.1(b)(1)(F), ten levels are added.

And under Guideline 2B1.1(b)(9)(C), two more levels are added.

And under Guideline 2B1.1(b)(10)(A), two levels are added more.

And under Guideline 2B1.1(b)(11)(C)(i), two additional levels are added.

And finally, under Section 3B1.3, two more levels are added.

The government also agreed not to oppose certain reductions in the defendant's offense level.

At the plea hearing, the Court accepted the defendant's guilty plea and deferred acceptance of the plea agreement.

Since then, the probation office has completed an initial and an amended and a final presentence and a supplemental addendum investigation report, Documents 33, 34, 35, and 38 on the Court's docket. Ms. Lipscomb is here from the probation office, appreciate your service in that regard. The Court has received and reviewed all of these reports.

The Court has also received and reviewed the parties' sentencing memoranda filed in this case.

Let me just ask, has the government received copies of all of the documents I've just mentioned, Mr. Landry?

MR. LANDRY: Yes, Your Honor.

THE COURT: And has defense counsel received all of these?

MS. LOCKARD: Yes, Your Honor.

THE COURT: Mr. Crosby, have you received all the documents I've just mentioned?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you had an opportunity to fully discuss each of these documents with your counsel, Ms. Lockard?

THE DEFENDANT: Yes, Judge.

THE COURT: All right. Let's briefly discuss the factual findings I'm going to use, Mr. Crosby, in sentencing in your case.

For purposes of sentencing, I intend to rely on the facts as set forth in the final presentence investigation reports, all four of them, as I mentioned.

Additionally, because the defendant entered into an 11(c)(1)(C) pleading under the Federal Rules of Criminal Procedure, in an agreement on that, I also intend to rely on the facts as set forth and attached to the plea agreement in Statement A or Attachment A that the defendant signed, which he admitted to the offense of conviction here, absent any objection from either side.

Are any of the facts reported in the presentence investigation reports disputed by the government or by the defendant?

Mr. Landry?

MR. LANDRY: Not by the government, Your Honor.

THE COURT: All right.

Ms. Lockard?

MS. LOCKARD: Your Honor, there are facts that are in dispute as relates to the enhancement that was applied under Section 3A1.1. Outside of those, there is no objection.

THE COURT: We'll get to that shortly. Thank you very much, Ms. Lockard, for advising on that.

So there being no objections to the facts, other than what Ms. Lockard's alluded to, the Court will adopt the statements contained in the final presentence investigation reports and the statement of facts attached to the plea agreement as its finding of fact for purposes of sentencing here today.

I want to briefly explain to you, Mr. Crosby, the Court's method for determining your sentence. The Court must impose a sentence that is sufficient but not greater than necessary to comply with the purposes of sentencing as set forth under 18 U.S.C. 3553.

In that context -- or, pardon me, in the context of the plea agreement here made under Rule 11(c)(1)(C), this means that the Court must determine whether a sentence of 37 months on each count to run concurrently, followed by up to three years of supervised release on each count to run concurrently as well, is an appropriate sentence in your case.

Making that determination, Mr. Crosby, requires the Court to consider a number of factors set forth under 3553(a) of the United States Code, Title 18, including consideration of the advisory sentencing guidelines.

So before we get into the sentencing factors, I want to discuss the objections to the final presentence investigation report Ms. Lockard mentioned earlier.

The report indicates that there is one pending objection at present. Before we proceed, though, let me ask counsel, are there any other objections not yet raised by either side?

Mr. Landry?

MR. LANDRY: Not from the government.

THE COURT: Ms. Lockard?

MS. LOCKARD: No, Your Honor.

THE COURT: All right. So let's talk about the one objection.

Do you want to be heard on that objection, Ms. Lockard?

MS. LOCKARD: Your Honor, we can rest on the facts. I would simply highlight, as I already articulated in our letter, that the individuals who are listed, N.F. and N.F.'s mother, were both party to the communications.

And so while the government has advanced the theory that N.F. is vulnerable because he was incarcerated, his mother was not incarcerated and she was copied on all of the communications between the parties.

So for the reasons that we articulated, and the fact that she received all of the correspondence and was in fact the person who identified Mr. Crosby post his offense through what she was seeing in the media, she certainly could have arrived at this conclusion sooner, was not restricted in the way that the individuals and the case law were restricted by being incarcerated.

And so for those reasons, Your Honor, we would ask the Court to sustain the objection.

We have also noted that the conduct is already accounted for in the objection that we've agreed to with the government, which is an enhancement under 3B1.3.

THE COURT: Very well. Ms. Lockard, is N.F.'s mother an attorney, as far as you know?

MS. LOCKARD: Your Honor, may I have just a moment?

THE COURT: Certainly.

MS. LOCKARD: Your Honor, based on my understanding, she is not an attorney but she was copied on all of the correspondence. And as I've indicated, she did not have the same restrictions that the individual which is in the case that Mr. Landry relied upon, had.

THE COURT: Any specialized training in the law or is she -- any employment law related? N.F.'s mother.

Mr. Landry, do you know the answers to those questions?

MR. LANDRY: I don't, Your Honor.

THE COURT: Okay.

MS. LOCKARD: Your Honor, my understanding is that she volunteered services at the local jail. I believe that she did have some background and experience with the legal system. I understand that her son had an appellate attorney already, and she was looking for a consultation as relates to advice that was being given.

So I don't believe she was necessarily in the legal profession, per se, but she had more experience than an average individual.

THE COURT: Is there anything to show that? Is there any proof of that, her employment status or volunteer status with the local jail?

MS. LOCKARD: Your Honor, I do not have that information with me, but my understanding is that she was the one who actually sought the services and then retained them on behalf of her son who was incarcerated.

THE COURT: So any further argument on this first objection?

MS. LOCKARD: No. No, Your Honor.

THE COURT: All right. There is one sole objection to the two-level enhancement before the Court for targeting a vulnerable victim.

Mr. Crosby objects to the two-level enhancement that the probation office has imposed pursuant to Section 3A1.1 for

targeting a vulnerable victim. Counsel for the government supports the position of the probation office on this.

Pursuant to Section 3A1.1, a two-level enhancement applies to a defendant if the defendant knew or should have known that a victim of the offense was a vulnerable victim. As reflected in the final presentence investigation report, after Mr. Crosby's plea was featured in the local news, a woman by the name of L.D., we'll use her initials, contacted the United States Attorney's Office to report that Mr. Crosby claimed to be an attorney and she retained his services for her son, with the initials of N.F.

N.F. had been sentenced in state court to five years' imprisonment and had been admitted to the Ohio Department of Rehabilitation and Corrections. Mr. Crosby communicated directly with N.F. while he was incarcerated, and Mr. Crosby ultimately accepted $2,500 from L.D., the defendant's mother in that case, to represent N.F.

This conduct occurred after Mr. Crosby was indicted in this case before the Court.

The probation office found that the two-level enhancement under 3A1.1 applied because N.F. was a vulnerable victim by virtue of N.F.'s detention and diminished ability to communicate with the outside world and research counsel.

Defendant asserts that the enhancement was improperly applied because N.F. collaborated with L.D., his mother, to

retain Mr. Crosby.

And although N.F. was detained but L.D., his mother, was not, the mother, L.D., met with Mr. Crosby in an office in Mason, Ohio, I believe he had rented, signed an engagement letter and paid him to retain Mr. Crosby's service on behalf of her son.

If defendant's argument is to be believed by this Court, L.D.'s role mitigated any vulnerabilities that N.F. suffered as a result of his incarceration.

The defendant also notes that Mr. Crosby's conduct has been accounted for in a separate enhancement under Section 3B1.3, as Ms. Lockard has argued.

The commentary to Section 3A1.1 of the sentencing guidelines provides that a vulnerable victim is an individual who, quote, is a victim of the offense of conviction and any conduct for which the defendant is accountable, end of quote, and who, quote, is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct, end of quote.

Though the defendant makes a somewhat persuasive argument, the Court finds that the government has shown by a preponderance of the evidence that the enhancement under 3A1.1 applies here.

Similar facts were before the Sixth Circuit in the case of *United States versus Wilson* at 561 F.App'x 451 on pages 452 and

453.   In that case, the circuit agreed with the district court's application of the enhancement based upon the fact that the incarcerated victim, quote -- victims, quote, were particularly susceptible to his criminal conduct because of their limited education, cognitive abilities, and ability to understand the legal technicalities of their case, and because of their limited communication with and isolation from the outside world due to their incarceration, end of quote.

Here, although N.F. may not have been as isolated due to his mother, L.D.'s, involvement in the case, this factor does not negate the uncontroverted evidence that N.F and his mother L.D. were particularly susceptible to Mr. Crosby's criminal conduct by virtue of his detention.

Mr. Crosby took advantage of a desperate situation and two desperate people who were not attorneys and who were unfamiliar with the law and legal processes and procedures.

Mr. Crosby send a letter to N.F. while N.F. was in custody offering appeal-related services after Mr. Crosby had been indicted again in this case.  He offered his services under the banner of Verdict Law, a fictitious company with its own website.  Thus, it is reasonable to infer that Mr. Crosby preyed on N.F. as a result of his incarceration status, similar to the victims in the *Wilson* case.

Further, the evidence presented indicates that L.D. became involved after Mr. Crosby contacted N.F.  So although she may

not have suffered the same vulnerabilities as N.F. and could have discovered Mr. Crosby's identity, this does not mean that L.D.'s involvement made N.F. any less vulnerable.

Additionally, as noted in *Wilson*, the families of the incarcerated individuals in that case were also vulnerable victims because of desperation, lack of recourse, and information and unsophistication.

The Court therefore overrules the sole objection raised by Mr. Crosby in today's sentencing hearing.

The Court next turns to the sentencing guidelines. I need to establish for the record, Mr. Crosby, the sentencing guidelines range that applies in your case. While the sentencing guidelines are not binding on this Court, I am required by the *Booker* decision from the United States Supreme Court to at least consider them in fashioning a sentence to be imposed in your case.

The base offense level for which the defendant pled guilty is six under the guidelines. A ten-level enhancement is applicable under Section 2B1.1 -- pardon me -- 2B1.1(b)(1)(F) because the total intended loss in this case is $208,269.29, which is more than $150,000 but less than $250,000.

A two-level enhancement applies pursuant to Section 2B1.1(b)(9)(C) because, during the offense, Mr. Crosby practiced law despite having been disbarred from doing so after the Ohio Supreme Court issued an order accepting his

resignation from the practice of law with the disciplinary action pending at the time.

A two-level enhancement applies under Section 2B1.1(b)(10)(A) because during the offense, Mr. Crosby applied for positions in areas where he was not well-known in the legal community; his actions, therefore, made it apparent that he relocated his fraudulent scheme in an effort to avoid detection.

A two-level increase is appropriate under Section 2B1.1(b)(11)(A)(ii) because Mr. Crosby's offense involved the possession of or use of an authentication feature by way of a passport number, which belonged to Mr. Crosby's former girlfriend, and the three social security numbers which belonged to other individuals.

As discussed earlier, a two-level increase also applies pursuant to Section 3A1.1 because N.F., the victim in the state court case, qualifies as a vulnerable victim.

A two-level enhancement also applies under Section 3B1.3, because the funds Mr. Crosby received from law firms involved in the offense could only be obtained by way of the special skills he learned in his capacity as an attorney before his disbarment.

Thus, the adjusted offense level here is 26. A two-level decrease is appropriate under the Guideline Section 3E1.1(a) based upon the defendant's acceptance of responsibility, and I

might say reluctant.

I will now entertain a motion from the government as to whether an additional level increase is appropriate under the Guidelines Section 3E1.1(b) based upon the defendant's timely notification.

MR. LANDRY: The government so moves, Your Honor.

THE COURT: All right. Therefore, the total offense level here -- the motion will be granted -- is 23.

Mr. Crosby has prior convictions for theft as a result of stealing client funds while employed as an attorney.

Under the guidelines, his total criminal history score is one, which establishes a Criminal History Category of I.

So against that backdrop, as I previously noted, a proposed 11(c)(1)(C) plea agreement also figures into the Court's determination of the appropriate sentence.

Based upon a total offense level of 23, a Criminal History Category of I, the advisory sentencing guidelines imprisonment range is 46 to 57 months.

Because this range falls in Zone D of the sentencing table, the guidelines suggest that a minimum term of imprisonment shall be -- a minimum term shall be satisfied by a sentence of imprisonment.

Because the offenses in this case are Class D felonies, the guideline range for a term of supervised release is at least but not more -- at least one but not more than three

years of supervised release.

The guidelines advise that the defendant is ineligible for probation in this case, and suggests a range of between 20 and $200,000 for a fine.

There is also a mandatory $300 special assessment under 18 U.S.C. 3013, which is unpaid at this time as I understand.

Restitution shall also be ordered by statute and Sentencing Guidelines Section 5E1.1.

Next, when imposing a sentence, Mr. Crosby, the Court must consider several factors under 18 U.S.C. 3553(a).

As to the nature of the offense, Mr. Crosby stands before the Court for sentencing on three counts of social security fraud.

Next, as to victim impact, the provisions of the Mandatory Victims Restitution Act of 1986 applies in this case.

Mr. Crosby owes a restitution to Law Firm Number 1, Law Firm Number 1A, and Law Firm Number 2. The amount owed to Law Firm Number 1 yet remains undetermined.

As to the history and the characteristics of the defendant, Mr. Crosby is 37 years old and a father of three minor children.

He has prior convictions for theft of client funds, as I mentioned, while serving as an attorney.

Mr. Crosby had a traditional upbringing as far as the Court is able to determine, in a financially stable household

alongside his sister, Danielle. He enjoyed school, sports as a child. His parents were loving and supportive, not something typically seen by this Court. Typically, the households that the individuals come before the Court are not as comfortable as what you lived in, Mr. Crosby. He did not suffer any abuse or neglect.

Mr. Crosby's parents and sister still reside in the Columbus area where he was raised.

Mr. Crosby graduated from college in 2009, he then went on to attend law school. He graduated law school in 2012, and then passed the bar in 2014.

Mr. Crosby worked at several reputable law firms before engaging in fraudulent conduct while engaging in the practice of law.

After his conduct was discovered, Mr. Crosby was criminally prosecuted in state court. He was ultimately disbarred in Ohio.

However, this did not deter Mr. Crosby. As we mentioned, prior to, during, and after his state prosecution and disbarment, Mr. Crosby sought, and in some circumstances successfully obtained, employment with other law firms in various jurisdictions outside Ohio undoubtedly to avoid detection.

In connection with those pursuits, Mr. Crosby used aliases and provided false information, such as social security and

passport information, that belonged to other individuals, such as his father and a former girlfriend.  Three law firms paid Mr. Crosby varying sums.

Even after he was indicted in this case, again Mr. Crosby still held himself out as an attorney and offered legal services.

As discussed earlier, Mr. Crosby offered his legal services to the victim named N.F. and accepted $2,500 to represent N.F. in a criminal appeal in state court.

In addition to his career in law and the events giving rise to his case, the Court notes that Mr. Crosby ran for public office in 2018 in Ohio Second's Congressional District.

Mr. Crosby was married for several years before he and his wife divorced.  He and his wife have joint custody of three children.  There are pending legal proceedings related to child support in state court.

In an interview with the probation office, Mr. Crosby's friend by the name of Ms. Payton described Mr. Crosby as a devoted, enthusiastic father.  Though his offenses are serious, she does not believe his criminal behavior is indicative of his character.  She believes that his criminal prosecution has been an effective deterrent of other unlawful acts.

I'm not certain that's an accurate statement based upon Mr. Crosby's conduct after being indicted in this case and committing other fraudulent acts.

Mr. Crosby was interviewed by the probation officer and provided a statement admitting to his involvement in the offense pursuant to the statement of facts attached to his plea agreement. After much time had passed, Mr. Crosby eventually accepted responsibility for his criminal conduct. The Court considers the offense in this case is serious and a blight on those who practice law in this community.

Beyond the nature of the offense and the defendant's history and the characteristics I've just referred, I have also considered the need for a just punishment that will promote respect for the law, deter others, and protect the public from future crimes by this defendant.

With respect to the need for educational or vocational training, medical care or other treatment, though Mr. Crosby does not believe that alcohol has had an adverse impact on him, the Court believes that his alcoholic use or abuse has contributed to his offense of conviction today. Accordingly, Mr. Crosby may benefit from substance abuse treatment.

Mr. Crosby may also benefit from mental health treatment as well.

The Court has considered any pertinent policy statements under 3553(a)(5).

Beyond this, the Court has also considered the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct

as Mr. Crosby.

As part of that consideration, the Court has reviewed the data available from the United States Sentencing Commission. That data reflects that the average imprisonment for defendants like Mr. Crosby with primary guideline ranges under Section 2B1.1 and offense level 23 and a Criminal History Category of I is 35 months' imprisonment. This includes data from fiscal years 2019 through 2023, and excludes defendants that have received substantial assistance departures under 5K1.1.

As to Section 3553(a)(7), due to the nature of the case, the Court notes that the defendant has agreed to pay restitution as part of his sentence.

Finally, as I've also noted, I've considered the plea agreement that's been tendered to the Court.

We're now, Mr. Crosby, at what is called the allocution. You'll be given an opportunity to address the Court if you would like in terms of any mitigation of sentence that the Court will impose.

Mr. Landry will also be given an equal opportunity to argue with respect to mitigation and aggravation.

One question I will have, if you do address the Court, Mr. Crosby, is where is the Porsche that has been the subject of some discussion? It's in your PSR as you indicating you have no knowledge of where that is. That's hard for the Court

to believe, but you'll get an opportunity again if you would like to address the Court on that point.

Ms. Lockard, you have the floor.

MS. LOCKARD: Your Honor, I think there has been a lot of focus on the nature and circumstances of this offense, and there's certainly been a lot of emphasis on the seriousness of the offense, which the defense does not dispute.

I will note that as part of Mr. Crosby's acceptance of responsibility, he agreed to every conceivable enhancement that the government and the defense believe applied. And he did not attempt to negate his criminal conduct or any sort of penalty that would be associated with it.

Your Honor, but the nature and circumstances of the offense are only one of the factors that the Court is required to consider under 3553(a), and that is balanced against his history and characteristics.

And I wanted to briefly read from the case of *Pepper versus the United States*, which is 131 Supreme Court 1229, it's a 2011 case.

And in that case, the Court says, "'It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate and sometimes magnify the crime and the punishment to ensue.' Underlying this tradition

is the principle that the 'punishment should fit the offender and not merely the crime.' For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender."

The Court certainly highlighted a lot of Mr. Crosby's life that did not include his offense conduct. He's an educated individual. He comes from a good and strong supportive family, and he has had a lot of opportunities in his life.

The Court also identifies an issue with which Mr. Crosby struggled, which was his alcohol use. Certainly detailed in the PSR and our supplemental letter to probation, we indicated when that alcohol use and frequency increased.

You know, Mr. Crosby unfortunately dealt with a very, you know, significant divorce and the fallout of that, and dealing with the stress of that underlies some of his conduct that happened here.

But, Your Honor, I would also like the Court to consider the post-offense rehabilitation that Mr. Crosby has engaged in since he's been at the Butler County Jail.

We provided the Court with character letters that detail his participation in a rehabilitative program at the Butler County Jail.

The Court is also privy to circumstances which he

participated in that emphasized his attempt to rehabilitate himself, and he also provided a letter from Mr. Green. Your Honor, all of these letters demonstrate the fact that he is working hard to rehabilitate himself in recognition of his wrongdoing.

Your Honor, I would ask the Court to take all of those things into consideration. The government and the defense are jointly recommending a sentence of 37 months. We appreciate the fact that the Court has already noted, gave us an opportunity to converse prior to this hearing, this is a very serious case. And Mr. Crosby, you know, moves forward today with the sentencing with a full understanding of what he is facing.

Your Honor, I believe my client has remarks prepared as well, and we will ask the Court to adopt the recommended sentence of the parties.

THE COURT: All right. Very well. Thank you.

You may proceed, sir.

MS. LOCKARD: Your Honor, may we have just a moment?

THE DEFENDANT: Do you want me to stand, Your Honor, or sit?

THE COURT: However you feel comfortable, Mr. Crosby.

THE DEFENDANT: Thinking about this for the last year and a half, I actually did not have specific remarks that I wanted to get through to you today. If it's okay with you, I think

I'll just speak from the heart and the mind, but it may be a little bit more blunt and may not be as succinct as normal, but I'll try to keep it succinct, if that's okay.

THE COURT: That's fine.

THE DEFENDANT: I know more than anybody probably in here the opportunities I was given throughout my life and what I have strived to be and what I have attempted to do in my life.

And at 37, for lack of a better phrase, Judge, I busted my ass to get to where I was before everything happened. I wanted to graduate, go to a big firm, provide for my family. And I have a lot of other goals that I want to achieve.

And I think among the many things that bother me is I'm going to be remembered, at least in part no matter what I do, for what's transpired obviously here over the last few years.

And a lot of the first phrases I hear, even in the Butler County Jail, are from people who come in from programs, "What are you doing here?" Or "You don't speak like others." Or "you just -- it doesn't feel like you belong. Tell me your story. What have you learned?"

And that's something I do think about day in and day out, what have you learned?

Never really judge a scowl, don't necessarily trust a smile. That you can't -- you can't continue to do things and hope that people will see the true character inside of you. That family is everything, as I truly believe. And no

disrespect intended, sitting here looking at this Court and looking at you today of all days, it's my daughter's sixth birthday. It drills it home a little bit differently too.

I was also taught to do what you say and be what you say, because actions speak louder than words, which is a mantra everyone has heard. And I'm not terribly familiar with your judicial career, but I'm sure you've sat up here long enough to know you hear the common phrases, "you're not going to see me again, this is a mistake," yada, yada, yada.

You will see me again, it just won't be in this manner. It will be as a loving father, because my kids are my world, and it will be as a successful businessperson because that's where my mind has gone and I am driven to that.

It will be as an impactful member of the community. Because despite my divorce in 2019, when pretty much all of this started and the bad decisions -- which subsequently I have to take full responsibility for -- started, I truly believed in giving nothing -- giving everything, expecting nothing thereof.

I donated thousands of hours to local charities. I became the youngest member, the youngest board member for Make-A-Wish in Southern Ohio history because of that. I always try to go the extra mile for anybody. And I did go through some things personally, but it does not negate what I did.

So I accept full responsibility. I have reflected on it. And I sincerely promise, as I know you mentioned earlier,

you're not necessarily certain if the conduct has been deterred or if the circumstances have been a true deterrent. I can assure you, nine months alone, eight and a quarter, whatever the exact math wants to be, I knew after 30 days, I knew after two months. And I think about it every day when I open my eyes and see cinderblocks. This will be a chapter in my story, but it won't be the cover, that I can promise you.

People always will look at it and point to this particularly, and that's okay. There is a shame associated with the acts and for being in the criminal justice system.

I hope to one day be a part of shifting that shame, because there is a lot of good people in there. There is a lot of people that belong in there. There is a lot of people that just made a genuine mistake for whatever reason.

And I feel, again, more than most in here, I'm uniquely qualified to make that distinction, having done what I did in the past, my actions which brought me here, and what I've seen while I've been inside.

There's a lot of talk about, "What are you going to do? How are you going to rebound? What's it going to be like when you get out?" And I'll be something -- I'll say something also. I probably needed to sit down for a while. I needed that time to reflect.

I'm not going to sit here and lie. I always thought of my life, you want to hit a reset button, you need to take a pause

and figure out what you're doing and where you're going, but we never take the time to actually do it. I got that.

So I apologize to my family who I have impacted more than anything. I apologize to the victims in this case who should not have to deal with anything, despite law firm personnel, individual, again should not have to deal with it. I expect better of myself.

I apologize for seeking this Court's time, but you will see me again in a much different capacity, that I do assure you.

THE COURT: All right. Mr. Crosby, can you answer my question I posed earlier? Where is the Porsche that you say you don't know where it is? You refused to give information about that to the probation officer during the PSR interview.

MS. LOCKARD: Your Honor, may I have just a moment?

THE COURT: Sure. Paragraph 118 of the PSR.

THE DEFENDANT: Which section, Judge?

THE COURT: Paragraph 118 of the PSR.

Ms. Lipscomb, while this is happening, or this conversation between counsel and the defendant is occurring, was there ever an execution of the authorization forms allowing for financial disclosure of records and tax records?

PROBATION: Your Honor, those forms weren't signed.

THE COURT: They were not?

PROBATION: Correct. So no.

THE COURT: So still unsigned. Thank you.

Ms. Lockard, it was a very simple question I asked of your client, where is --

MS. LOCKARD: Well, Your Honor --

THE COURT: -- the Porsche?

MS. LOCKARD: I understand that. I'm trying to walk through all of the potential issues. I don't believe that he necessarily refused to answer a question based on what's in the PSR.

I understand that it's in the paragraph that indicates he has no assets. So I'm trying to make sure that I am protecting my client's interests.

THE COURT: He was seen driving the car by law enforcement and now its whereabouts are unknown.

This is not a hard question. Where is the car?

THE DEFENDANT: The car's with my family, Your Honor. The car is in my father's name. The car has always been in my father's name. He pays for it out of his own pocket. He's spent --

THE COURT: And he let you use it, his adult son?

THE DEFENDANT: Yes, he let me use it, his adult son, because at the time I do not have a vehicle that was operable.

He spent 33 and a half years as a law enforcement officer. He had a stroke a year and a half ago, two years ago. He still continues to pay the loan on the vehicle.

THE COURT: Enough. I've heard enough. Thank you.

Why have you not -- the plea agreement requires you, under paragraph 9, additional obligations of the defendant, and it says, "If requested by the United States Attorney, the defendant will promptly execute authorizations to permit the U.S. Attorney's Office or its designated agency to obtain financial and tax records of the defendant."

And Ms. Lipscomb from the probation office has indicated to this Court that you have not executed the ordinary forms allowing for the release of financial and tax records that every defendant does who signs a plea agreement of this sort.

Why have you not done that?

MS. LOCKARD: Your Honor, he executed it -- some of the release forms, not all of them.

THE COURT: For credit, for credit review but not for the authorization to obtain financial records.

Is there something you're trying to hide that relates to your financial records and tax records?

THE DEFENDANT: No, Your Honor. At the time -- can I go into the thing, is that okay?

MS. LOCKARD: Uh-huh.

THE DEFENDANT: No, Your Honor. When pretrial services came to visit me and requested the financial disclosures, the credit was, I think, subsequently signed.

At the same time, they handed me a stack of probably about

700 pages, which included all of my bank accounts and financial transactions up to that point, which to me at that point seemed like an unnecessary request, to re-sign the same documentation if there was an additional investigation regarding the Verdin Company.

THE COURT: Mr. Landry, has the United States Attorney's Office asked for these records?

MR. LANDRY: Your Honor, I personally have not, on behalf of the U.S. Attorney's Office, asked the defendant to sign any additional releases beyond what the probation department may have requested.

I would just note we do have a financial litigation unit that I think even post-sentencing, sometimes they will reach out to defendants with requests like that, but I personally have not been involved in that yet.

THE COURT: Is this not part of the plea agreement that ordinarily is executed that the parties sign?

MR. LANDRY: It is a usual part of the plea agreement, yes, Your Honor.

What I'm saying is that we don't necessarily in every case prior to sentencing send our own releases and requests to the defense. Again, I think probation usually does a great job of taking care of that.

THE COURT: Well --

THE DEFENDANT: If Your Honor would like it executed, I'm

happy to sign it right now, Judge.

But that's why. When they handed me the stack, there was about five to 700 pages, somewhere in between that, and it included all of my updated financial information, including itemization charges pretty much up until the day I became incarcerated. So at that point it didn't seem necessary to sign an additional release.

THE COURT: All right.

So paragraph 117 says, The probation officer requested Crosby sign the "Customer Constant and Authorization for Access to Financial Records" form during the presentence -- presentence interview, and he did not do so.

The probation officer emailed a copy of that form to Mr. Crosby's counsel so he could sign the form when the initial presentence report was reviewed.

He signed the form authorizing a credit check, but he did not sign the form allowing access to financial records.

I thought Ms. Lipscomb had a -- yeah, she does, it's here. Start at the beginning, "Mr. Crosby refused to sign an additional release of information regarding financial records. This behavior is inconsistent with the obligations to which he agreed in paragraph 9 of the plea agreement."

That's my concern.

THE DEFENDANT: Yes, Your Honor. Because it was an additional release.

MS. LOCKARD: Hang on.

Your Honor, I think, respectfully, the point that Mr. Crosby was trying to articulate to the Court is that at the time of his incarceration, the government had already received and obtained all of his financial information so the release forms seemed duplicative.

I don't believe that it's in violation of paragraph 9, because, as Mr. Landry already stated, the government themselves has not sought the release of this particular information.

Mr. Crosby has indicated his willingness to sign it, and their financial litigation unit will certainly handle the collection of restitution following the judgment in this case.

THE COURT: I'm going to let that stand, given that Mr. Landry has indicated that that's the status of things normally, but it was of concern to the Court since it contained in the presentence investigation report that it was a violation of the plea agreement, that it wasn't signed so I wanted to inquire about it. I am content that it's been responded to appropriately.

Okay. Is there anything the parties wish to raise, the defendants, in mitigation?

MS. LOCKARD: No, Your Honor. Thank you.

THE COURT: Thank you.

THE DEFENDANT: Can I even say -- can I refer to it, the

letter?

MS. LOCKARD: No.

THE DEFENDANT: Okay.

THE COURT: All right. Mr. Landry, anything in mitigation or aggravation of the sentence imposed?

MR. LANDRY: Your Honor, I am prepared to rest on the sentencing memorandum I filed on January 31st, in which the government asks the Court to impose the stipulated sentence from the plea agreement, unless the Court has any other questions or concerns I can address.

THE COURT: Very well.

Ms. Lipscomb, anything from the probation office?

PROBATION: Nothing from probation. Thank you, Your Honor.

THE COURT: Thank you for answering the questions I raised, appreciate your presence here and your responses.

All right. So it's time for the Court to announce its initial decision, and parties will be given an opportunity to make legal objections before the Court actually imposes a sentence.

I have given consideration to the 3553 factors and the guidelines and the plea agreement.

To begin, the Court will accept the plea agreement. And I might say, accept it reluctantly. I thought seriously about rejecting this plea agreement because of your behavior before

this Court.

You indicated to this Court, Mr. Crosby, you were a changed man as a result of this indictment and your conviction, but you lied to this Court. You don't remember, I do.

At your change of plea hearing, you said you had been a patient at the hospital the morning of your plea -- change of plea hearing, and you had a drip for morphine administered plus other drugs administered. The Court adjourned those proceedings. It turns out that was a boldface lie under oath in a court of law to this judge.

So I reluctantly accept the plea the parties offer under Rule 11(c)(1)(C).

So pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. 3553(a), it's the judgment of the Court that the defendant, Richard Crosby, is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 37 months on Count 14, a term of 37 months on Count 15, a term of 37 months on Count 16 to run concurrently with each other, with credit for time served.

This sentence reflects the seriousness of the offense and promotes respect for the law and provides just punishment for the offense while deterring any future criminal conduct.

This sentence is sufficient but not greater than necessary to satisfy the purposes of sentencing.

The sentence is below the guideline range, but only

slightly, but is consistent with the range of sentences imposed for defendants with similar records found guilty of similar conduct as you.

The Court finds the sentence includes, as I mentioned, a slight downward variation or variance. And for these reasons that follow, that's why I am going to grant it, or at least accept the plea agreement.

The sentence will afford an adequate deterrence to criminal conduct. I believe you lived pretty much a privileged life of comfort. You're now going to have to be subjected to ordinary effects of anybody else who commits a crime and live in a Bureau of Prisons facility for the next 37 months with that time served credit coming off. I think that's going to be a shock to your system.

I think fraud convictions -- you don't really have a criminal history, again, although I am absolutely offended that you committed further crimes after appearing before this Court involving those individuals in state court that you reached out to and took advantage of their desperation and their situation.

You've not been incarcerated. As I indicated, a 37-month imprisonment is going to be a lengthy time for someone like you. You're a former lawyer and until now, again, you've enjoyed a fairly comfortable lifestyle.

It's only slightly above -- or slightly below, I should say, the average term of imprisonment for defendants who have

committed similar crimes. Normal sentence is 35 months, you're a little bit above that with your guideline range and your criminal history.

You owe restitution in the case. I'm interested in you getting out and having to satisfy that restitution that you owe to the victims who you took advantage of.

While serving your imprisonment, I'm going to recommend that you participate in substance abuse and mental health treatment, counseling and treatment.

You'll have a term of supervised release, Mr. Crosby, of three years on Count 14, three years on Count 15, and three years on Count 16, again to run concurrently.

Here's what's going to happen though. I'm going to continue to monitor your case. I'm going to keep your file right on my desk. And the warning here is that once you are released by the Bureau of Prisons, if you violate any one of the terms or conditions that are imposed by this Court, you're going to find yourself right back before this Court and I am going to send you back to prison.

So if you come out and you do some of the same things that you did while you were before this Court, in terms of lying to this Court, in terms of engaging in further criminal conduct after you appeared before this Court, as you did with the victims again in state court whose appeal you sought to represent them on, I'm going to hear about it, and you're going

back to jail.

That's should be a deterrent. If not, you'll see.

So within 72 hours of release from imprisonment, Mr. Crosby, you will have to report to the probation office in this district -- in the district where you'll be released, most likely here, given that you're from here.

While on supervision, Mr. Crosby, you must not commit another federal, state, or local crime.

You'll be prohibited from possessing a firearm, ammunition, destructive device or a dangerous weapon.

And you must not unlawfully possess a controlled substance.

You must refrain from any unlawful use of a controlled substance, and that includes marijuana. It's still a federal crime. It's not in the State of Ohio, but it is a federal crime here, so that's one of the conditions that will be imposed.

You must submit to a drug test within 15 days of being released on supervised release and at least two periodic drug tests thereafter as determined by this Court.

You must cooperate in the collection of DNA as directed by your probation officer.

You must comply with the standard conditions of supervision that have been adopted by this Court, as well as the following special conditions:

Mr. Crosby, you have to participate in a program of testing and treatment for alcohol and controlled substance abuse as directed by your probation office until such time as you are released from that program by your probation officer.

You will be obligated to make a copayment of at least $25, and it will be determined by your ability to pay so it may be less than that.

You'll have to participate in a program of mental health assessment and/or counseling -- some of your behavior can't be explained any other way -- as directed by your probation officer until such time as the defendant is released from that program by your probation officer.

And you must make a copayment for that treatment as well, not to exceed $25 per month, and it will again be determined by your ability to pay.

You have to provide all financial information as requested by your probation officer. It's going to be a condition, going to be a term of your supervised release. Don't do it, I'll hear about it, you're going back to jail.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Very well. You'll have to apply for positions -- you can't apply for any position as an attorney in the future.

And you shall complete at least 300 hours of community

service with an agency approved by your probation officer during your supervised release term. Another condition, and I want you to fulfill that condition, otherwise I'll hear about it, and you know what the results will be if I hear that you are not abiding by the terms and the conditions imposed for supervised release by this Court.

There's not going to be a fine in this case or awarded in this case, I don't think you have the ability to pay. You've got some child support payments that you need to catch up on, and a fine would not be something that would be needed here.

You'll have to make the mandatory assessment payment of $100 per count, total of $300, that is due immediately. So you'll have to make arrangements to make that payment.

You're further ordered, pursuant to the terms of the plea agreement you have entered, under 18 U.S.C. Section 3663(a)(3), to pay restitution in the amount of $133,269.29 to Law Firm 2, $37,500 to Law Firm 1A, and you'll have to pay restitution to Law Firm Number 1, once that amount is established.

And I think by statute, they have 90 days; is that right, Mr. Landry, to be able to make a claim?

MR. LANDRY: That sounds about right, Your Honor. We have reached out to that firm, we just haven't received a response.

THE COURT: Very well. Because a restitution amount at Law Firm 1 remains pending, the Court will set a date for a final determination of that restitution, and that date will be

May 30th, 2025, in accordance with 18 U.S.C. Section 3664(d)(5). Restitution is due immediately, with any unpaid balance to be paid in the amount not less than 10 percent of Mr. Crosby's net income per month.

While incarcerated, Mr. Crosby, if you are working for a non-UNICOR or grade 5 UNICOR job, you'll pay $25 per quarter towards your restitution obligation.

If working in a grade 1 through 4 UNICOR job, you'll be required to pay 50 percent of your monthly pay towards restitution to the victims of this case.

A change in the schedule shall be made only by an order of this Court.

So pursuant to 18 U.S.C. 3612(f)(3)(A), the Court will waive the requirement of any interest on any balance on the restitution not paid within 15 days of the judgment entered in your case.

The Court considers this sentence I'm imposing against you, Mr. Crosby, to be just and reasonable in light of the defendant's conduct and the applicable sentencing factors.

Again, I really seriously thought about rejecting this plea and making you go back to the table to take on another plea. But we're going to grant it this time because it is within the range that normally applies to a defendant similarly situated as you.

With that having been said, I'm going to ask the parties,

Ms. Lockard, do you have any objections to the sentence that the Court has now stated?

MS. LOCKARD: Your Honor, I have no objections. But Mr. Crosby had three requests with regards to recommendations.

THE COURT: We'll get to that shortly.

Any objections from the government?

MR. LANDRY: No objections, Your Honor.

THE COURT: Mr. Crosby, do you have any objections to the sentence the Court has announced?

THE DEFENDANT: No, Judge, but thank you.

THE COURT: Very good.

THE DEFENDANT: You'll see me again.

THE COURT: All right. The sentence as announced by this Court will therefore be imposed.

The last thing we have to do is talk about where you'll be placed, and Ms. Lockard has already expressed an interest in that.

So you'll have the floor, Ms. Lockard. Where is it the defendant would like to be placed?

MS. LOCKARD: Your Honor, he's asking for a recommendation of FCI Ashland in addition to the maximum recommendation for the residential reentry center or EMU.

He's also requested, which I relayed to Mr. Landry, the return of two cell phones and thumb drives that contain the photographs of his children.

THE COURT: Very well. Okay. We'll make a recommendation that you be placed in either of those facilities by the Bureau of Prisons. Again, Mr. Crosby, I don't have control over that, I can recommend it. They try and accommodate, but it will be based upon the needs of the facilities and their ability to place you there.

Let me ask, Mr. Landry, is there any way to get the information back related to the cell phones?

MR. LANDRY: As I told Ms. Lockard earlier, I will discuss that with the case agents. Those agencies maintain possession of things like that in their evidence locker, it's not myself personally, so I'm happy to take it up with them and see what I can learn.

THE COURT: If that's possible, let's get it done.

Any apprenticeship programs that you would like for this Court to recommend that you be engaged in, Mr. Crosby?

THE DEFENDANT: Your Honor, that was the reason for the ask for the RRC or the EMU. Like you said --

MS. LOCKARD: Yes or no.

THE DEFENDANT: Yes.

THE COURT: Apprenticeship programs meaning carpentry, HVAC, anything like that.

THE DEFENDANT: To be a hundred percent transparent, Your Honor, I've never really thought about the trades like that. I kind of would just be like seen and trying to feel it out

because I'm not the most handy person, that's why I went to law school.

THE COURT: Okay. All right.

THE DEFENDANT: The reason for the request for the RRC is because I do know the vocational trainings, at least I've heard, is, especially with people who no longer have active licenses, when you do hit that, they work with you as far as getting you in a field, whether it's sales or -- I believe you have the letter in front of you with Mr. Fulcher regarding some of the vocational opportunities that he specifically had talked to me about, given second-chance employers that he works with, but given my level of expertise and skill, would be in a front office position or different positions within the offices. So that's the reason for the request specifically, and you have that letter.

THE COURT: We will try to recommend that you have vocational program training at a facility offered by Bureau of Prisons for that training. If those ones that you identified are the ones, I'll make again the recommendation. I can't control the decision.

Very well.

THE DEFENDANT: Wait. So you will make the max recommendation for RRC, sir, specifically?

THE COURT: What was it?

THE DEFENDANT: The max recommendation for RRC, that's

the --

THE COURT: Say it slowly, RFC?

THE DEFENDANT: RRC, residential rehabilitation center. That's the vocational training that you're referring to.

THE COURT: I will make that recommendation.

THE DEFENDANT: Thank you, sir, for RRC. Appreciate that.

THE COURT: All right.

The last thing we have to do is talk about your appellate rights. Under some circumstances, Mr. Crosby, a defendant has the right to appeal a sentence that's imposed. You can waive that right as part of a plea agreement.

As you know, you entered into a plea agreement which waives some or all of your rights to appeal the sentence itself. So subject to the waivers contained in that plea agreement, you're notified that you may have the right to appeal the sentence that I have imposed.

Appeal waivers are generally enforceable, you should note. But if you believe, for example, that there are other appellate issues, you can raise those with the appellate court.

If you are indigent and cannot retain a lawyer, you can apply for one and one will be appointed to represent you in your appeal.

You're further advised in accordance with the provisions of Rule 4(b) of the Rules of Appellate Procedure, you must file your notice of appeal with the clerk of this court 14 of after

the filing of the judgment in this case. I want to advise you that the clerk of the courts will prepare and immediately file a notice of appeal on your behalf. If you request, I'll order that clerk to file that notice of appeal immediately after the judgment is filed.

Let me ask you for the record, Mr. Crosby, would you like for this Court to direct the clerk of the court to file a notice of appeal on your behalf with regard to the sentence imposed?

THE DEFENDANT: No, sir.

THE COURT: Yes?

THE DEFENDANT: No, sir.

THE COURT: All right. Very well.

Ms. Lockard, if Mr. Crosby changes his mind, I'm sure you'll intercede to help. Thank you.

So it's my understanding you are to be detained without bond, but is there a motion on the part of the defendant with regard to that, Ms. Lockard?

MS. LOCKARD: No, Your Honor.

THE COURT: All right. Very well.

Would you like to be heard at all, Mr. Landry?

MR. LANDRY: No, Your Honor.

THE COURT: All right. So you'll remain in the custody of the United States Marshal pending your placement by the Bureau of Prisons to the facility of their choice with the

recommendation from this Court on the three that you've mentioned, or four, I can't remember.

THE DEFENDANT: Just the one.

THE COURT: All right. One that you mentioned.

Is there anything further that counsel wishes to put on the record before we close today's hearing?

MR. LANDRY: Not from the United States. Thank you, Your Honor.

MS. LOCKARD: No, Your Honor. Thank you.

THE COURT: All right.

Now, Mr. Crosby, I have given you as many warnings as I could about what's going to happen once you're released and on your supervised release.

But the other advice I can give you is you need to think about what has happened. You need to think about the consequences of what brought you before this Court. And you need to think about your future. You're 37?

THE DEFENDANT: Yeah, and just turned 37 in custody.

THE COURT: You're 37 years old. You have three children. You're going to get out, you're going to still be a fairly young man.

You need to think about what it is that you want to do on the legitimate side and not make excuses for yourself in gravitating back towards criminal behavior.

You are a smart individual, you passed the bar, you

practiced law. You were with some reputable law firms in this town. You can't do that anymore. I hope you don't use that as an avenue for making money in the future like you did in the instances that brought you before the Court.

But you can take those talents and you can use them for good and legitimate purposes and legitimate enterprises in the future, and I hope that you do that.

Otherwise, what's going to happen is you're going to be back before this Court on some other white collar crime. And then when your guidelines are determined, you'll have a criminal record that's going to go in your history. And the next time you're convicted or plea to a charge, if you come back before a court like this having committed another offense, you're going to spend a lot more time in prison. Because federal time is real time. You're going to do 85 percent of what you have been sentenced to.

So if you come back before the Court with another crime you're going to do a lot more time and that's going to be 85 percent of that. So think about all of those things. And you need to change your life and go in a different direction from what brought you before the Court. And lying to the Court is not a good thing.

All right. We're adjourned.

(Proceedings concluded at 3:31 p.m.)

CERTIFICATE


          I, Linda S. Mullen, RDR, CRR, do hereby certify that

the foregoing is a correct transcript from the record of

proceedings in this above-entitled matter.




/s/Linda S. Mullen                November 9, 2025
Linda S. Mullen, RDR, CRR        Date of Certification
Official Court Reporter